ROMÁN, PETICIONARIA Y APELADA, *v.* AGOSTO, DEMANDADO Y APELANTE.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en procedimiento de *mandamus.*

No. 1998.—Resuelto en junio 28, 1919.

NOTARIOS—COPIA CERTIFICADA DE PARTE DE UN TESTAMENTO—RECONOCIMIENTO DE HIJO NATURAL HECHO EN TESTAMENTO—INSCRIPCIÓN DEL RECONOCIMIENTO—REGISTRO CIVIL—PARTE INTERESADA CON DERECHO A SOLICITAR COPIA DE DOCUMENTOS NOTARIALES.—Los notarios, previo pago de sus honorarios, están obligados a expedir copia certificada de la cláusula testamentaria en la cual conste el reconocimiento de un hijo natural, pues éste· tiene derecho a inscribirlo en el Registro Civil, aun cuando no haya ocurrido la muerte del

testador; y a los efectos de la sección 25 de la Ley Notarial tal como quedó enmendada en marzo 12, 1914, no solamente es parte interesada para solicitar dicha copia el hijo natural reconocido, sino cualquiera de sus padres.

RECONOCIMIENTO DE HIJO NATURAL HECHO EN TESTAMENTO—FILIACIÓN—INTENCIÓN DEL TESTADOR.—Produciendo como produce sus efectos y de un modo irrevocable el reconocimiento de un hijo natural hecho por testamento desde el momento en que se otorga, huelga el ejercicio de la acción de reconocimiento para obtener lo que ya se ha obtenido por la voluntad del padre manifestada solemnemente, y cuya intención no pudo ser la de que el reconocimiento hubiera quedado reservado en el protocolo del notario, pues de haber sido esa su voluntad hubiera hecho testamento cerrado.

PROTOCOLO—EVIDENCIA—PROTOCOLO OFRECIDO COMO PRUEBA.—No comete error un tribunal por el hecho de ordenar a un notario que exhiba su protocolo especialmente en un caso como el presente en el cual la orden tiende a evidenciar si el reconocimiento se había llevado o no a efecto.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Angel R. de Jesús.*

Abogado de la apelada: *Sr. Leopoldo Feliú.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ emitió la opinión del tribunal.

Brígida Román solicitó de la Corte de Distrito de San Juan, Sección Primera, en 27 de agosto de 1918, librara auto de *mandamus* contra el Notario Adrián Agosto para que le expidiera copia del testamento otorgado por Manuel Font Jiménez, con fecha 31 de julio de 1916, en que reconoció como hija suya a la niña nombrada Josefina Manuela, procreada por dicho Font Jiménez y la peticionaria, cuya copia le había negado el expresado notario a pesar de estar dispuesta a pagarle los derechos y honorarios que le correspondieran por tal servicio.

El auto de *mandamus* fué expedido en forma alternativa y habiéndose opuesto a su cumplimiento el notario demandado porque los hechos alegados no eran suficientes para justificarlo y por impedírselo sus deberes notariales tratándose como se trataba de un testamento cuyo otorgante aun vivía, fué visto el caso con asistencia de ambas partes, recayendo sentencia en 7 de octubre de 1918 por la que se ordena al Notario Adrián Agosto Abadía expida a la peticionaria co-

pia legalizada de la cláusula de reconocimiento de hija natural a favor de Josefina Manuela, cuya cláusula es parte del testamento otorgado por Manuel Font Jiménez ante el referido notario en 31 de julio de 1916 bajo el No. 34 del protocolo. de dicho año.

Esa sentencia ha sido recurrida para ante esta Corte Suprema por el notario demandado y se alegan como motivos del recurso que la peticionaria no es parte interesada a los efectos de la sección 25 .de la Ley Notarial, porque el reconocimiento hecho en testamento no tiene efecto hasta después de la muerte del testador y porque la sección 25 citada en relación con la 23 autoriza a los notarios para expedir copias íntegras de los documentos que ante ellos se otorguen pero no de una parte de los mismos, habiendo además la corte cometido error al ordenar al notario en el acto de la vista que le exhibiera el protocolo del año 1916 en que obraba el testamento de que se trata.

"Testamento," según el artículo 675 · del Código Civil, "es el acto por el cual una persona dispone para después de su muerte de todos sus bienes o de parte de ellos." De ahí que la naturaleza jurídica del testamento es la disposición de los bienes para después de. la muerte del testador por lo que en cuanto a ellos no produce efecto legal hasta después que ocurre el fallecimiento. *Servera* v. *Otero,* 22 .D. P. R. 367.

Según el artículo 727 del mismo código todas las disposiciones testamentarias son esencialmente revocables, aunque el testador exprese en el testamento su voluntad o resolución de no revocarlas; pero como excepción a ese precepto general estatuye el artículo 731 que el reconocimiento de un hijo ilegítimo no pierde su fuerza legal aunque se revoque el testamento en que se hizo. Como consecuencia de la anterior excepción el reconocimiento de un hijo natural por medio de testamento produce sus efectos legales desde el momento en que se hace sin que sea necesario esperar la

muerte del testador, y en virtud de dicho reconocimiento el hijo natural adquiere los derechos de tal, los que no podría hacer efectivos sino mediante la prueba justificativa del acto de reconocimiento que en el presente caso no es otra que la copia de la cláusula del testamento de Manuel Font Jiménez en que se hizo, la que ha de anotarse en el registro civil para que exista en él constancia fehaciente del reconocimiento de la niña Josefina Manuela.

Comentando Manresa el artículo 741 del Código Español que corresponde al 731 del revisado, después de establecer los motivos que existen para que puedan ser revocadas las disposiciones testamentarias, se expresa en los siguientes términos:

"Pero no sucede lo mismo con la declaración que se hiciere reconociendo un hijo ilegítimo, puesto que se trata de un hecho cuyas circunstancias esenciales no están sujetas a modificación ni dependen de la voluntad del otorgante. Por el contrario, ese reconocimiento hecho constituye una confesión de la paternidad determinante desde su origen de la mutualidad de derechos y obligaciones, consecuencia del estado legal de familia; y reconocido este hecho en documento indubitado, basta que exista un solo momento para que produzca sus efectos de un modo irrevocable." 5 Manresa 723-4.

Produciendo como producen sus efectos y de un modo irrevocable el reconocimiento de un hijo natural hecho por testamento desde el momento en que se otorga, huelga el ejercicio de la acción de reconocimiento para obtener lo que ya se ha obtenido por la voluntad del padre manifestada solemnemente y cuya intención no pudo ser la de que el reconocimiento hubiera quedado reservado en el protocolo del notario, pues de haber sido esa su voluntad hubiera hecho testamento cerrado.

La sección 25 de la Ley Notarial de 8 de marzo de 1906, tal como quedó enmendada por la Ley No. 15 de 12 de marzo de 1914, dice así:

"Las partes, sus causantes y causahabientes en la materia del

contrato, y cualquier persona que aparezca interesada en el mismo, podrán solicitar y obtener del notario las oportunas copias de las escrituras matrices. Y cualquier otra persona podrá también obtener copia de un documento notarial mediante petición justificada ante una corte de distrito, que a su razonable discreción podrá librar una orden a ese efecto.''

El texto de la sección 23 de la Ley de 8 de marzo de 1906 es el siguiente:

''Se entiende por copia el traslado literal que de un documento otorgado ante un notario libre éste o el que tenga legalmente a su cargo el protocolo a los que la soliciten.''

Si en los casos autorizados por la sección 25 que dejamos transcrita puede un notario expedir copia de todo un documento notarial por la misma razón puede expedir copia de la parte o cláusula de un testamento en que se reconozca un derecho con independencia de las demás partes del documento. Y no solamente es parte interesada para solicitar dicha copia el hijo natural reconocido sino también cualquiera de sus padres, pues tanto a la madre como al padre afectan los efectos del reconocimiento.

Tampoco cometió error la corte al ordenar al notario exhibiera su protocolo del año 1916 pues el cumplimiento de esa orden tendía a evidenciar si el reconocimiento se había llevado o no a efecto para en su virtud estimar la procedencia o improcedencia del *mandamus* solicitado.

Es de confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados del Toro, Aldrey y Hutchison.

El Juez Asociado Sr. Wolf disintió.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO, SEÑOR WOLF.

En frecuentes opiniones esta corte ha declarado que un hijo natural adquiere un estado legal en dos formas, ya por

un acto voluntario por parte del padre hecho constar en una escritura, testamento u otro documento público o acto solemne, o mediante sentencia de una corte ordenando que se haga tal reconocimiento por el padre del hijo, o por sus herederos en caso de que el padre haya fallecido.

En este caso la teoría de la peticionaria y de la corte inferior, así como de este tribunal, era que la hija en cuestión había adquirido el *status* legal y voluntario de hija natural y que por ello era innecesario establecer una acción para obligar a hacerse el reconocimiento. La consecuencia necesaria de la opinión de esta corte es que ha habido y existe un reconocimiento solemne de la supuesta hija natural.

El artículo 675 del Código Civil dispone lo siguiente:

"El acto por el cual una persona dispone para después de su muerte de todos sus bienes, o de parte de ellos, se llama testamento."

El acto solamente ha de tener efecto a la muerte de la persona que lo ejecuta. De esto parece deducirse concluyentemente que el acto no tiene efecto alguno hasta que ocurra la muerte.

Pero dice la opinión de la mayoría que por virtud del artículo 731 del Código Civil el reconocimiento no pierde su fuerza legal aunque se revoque el testamento en el cual se hizo. En vista de este precepto la corte, según parece, llega a la conclusión de que un reconocimiento hecho en testamento es eficaz inmediatamente. No se expresan las premisas intermediarias y la corte necesariamente sostiene también que puede recurrirse asimismo a un procedimiento adjetivo, *qua mandamus*, con el fin de hacer que un notario presente determinada cláusula de un testamento que está bajo su custodia. No encuentro en ninguna parte nada que exprese que un reconocimiento hecho en un documento cuyo objeto es que sea un testamento, sea eficaz inmediatamente. El capítulo en el cual aparece dicho artículo 731, se refiere

únicamente a la revocación e ineficacia de los testamentos. Del hecho de que la revocación de un testamento no afecte al reconocimiento no se deduce que se cambie la naturaleza del "acto" mencionado en el artículo 675. Permanece allí inmutable hasta que la Legislatura decrete otra cosa, como un acto que ha de ser eficaz a la muerte del testador. La revocación no podría acelerar el acto si éste únicamente ha de tener efecto a la muerte del testador. La revocación de un testamento no es equivalente a la muerte del testador.

Pueden hacerse escritos para convertirse luego en escrituras, pero únicamente se convierten en tales escrituras al ser entregados. De igual modo puede hacerse un documento o escrito para convertirse en testamento de determinada persona, pero solamente llega a ser tal testamento con motivo de su muerte.

No trato de decir ahora que este escrito no podía servirle al hijo natural para obtener un reconocimiento, pero sostengo que no existe testamento y, por tanto, ningún acto solemne hasta la muerte del testador. Antes de llegar ese momento el documento permanece en suspenso y no figura como documento solemne.

Alguien podría pensar que realmente estamos tratando de un testamento revocado. Tal no es el caso. El supuesto otorgante del testamento, del acto definido en el artículo 675 que ha de surtir efecto al ocurrir la muerte, no ha revocado su testamento. Todavía se presume que es un testamento cuyo objeto es que surta efectos a la muerte de Manuel Font y Jiménez. El artículo 731 es aplicable solamente a los testamentos revocados.

El supuesto testador no ha fallecido. No se trata aquí de un testamento que se encuentra en el protocolo de un notario y que adquiere la fuerza de documento público por razón del fallecimiento. Sólo en ese momento es que tiene aplicación el artículo 731 para proteger al hijo natural. El

testamento, aun cuando haya sido revocado, ha de tener efecto
en cuanto a un reconocimiento como si jamás hubiera sido
revocado. La cláusula o cláusulas de reconocimiento u otras
análogas surtirán el mismo efecto que las que tendrán las
disposiciones de un testamento que no ha sido revocado, y
nada más. Estas disposiciones solamente surten efecto al
ocurrir la muerte. Un hijo natural puede ser reconocido por
documento público, pero un documento no es un documento
público meramente porque un notario dé fe del mismo. El
documento tiene que ser un acto humano lo mismo que una
escritura o testamento. Si un notario certifica que se recitó
ante él una poesía, la recitación no es un acto para la ley
y, por tanto, no es un documento público. Un testamento se
conoce por tal al ocurrir el fallecimiento, por tanto, de nuevo
insisto en que no puede haber documento público ni recono-
cimiento por testamento hasta que tenga lugar el fallecimiento.

Supongamos, sin embargo, que el testamento surta efecto
antes de la muerte para los fines de un reconocimiento, a
pesar de esto, el testamento tendrá que ser examinado para
ver si se otorgó de acuerdo con las formalidades de la ley,
o si es en cambio ineficaz como testamento. El acto de dar
fe del notario ante los testigos y demás formalidades ha de
hacerse constar. En el presente caso se exige que el notario
transcriba una cláusula cuya transcripción por sí sola no
muestra las debidas formalidades. En otras palabras, se
exige el notario que transcriba una cláusula sin demostrarse
antes que la cláusula es tal acto solemne que confiere al hijo
el *status*.

Creemos que la peticionaria debió haber tenido alguna
idea de esto, pues ella solicitó una copia del testamento mismo,
pero la corte inferior, según parece, creyó que no tendría
ella derecho a conocer el contenido de los demás particulares
del testamento y circunscribió, por tanto, su *mandamus* a la
copia de la cláusula en que se reconoce a la hija.

Esta decisión dice además que las cortes tienen facultad para obligar a un notario a leer un testamento, a buscar su contenido y sacar de él la cláusula en que se supone o alega que se reconoce al hijo natural. Es bien sabido que el notario que redacta un testamento no siempre es el guardián del protocolo, pero aun cuando lo sea, no existe presunción de·que él conoce el contenido del testamento. De acuerdo con la ley, artículo 25 de la Ley Notarial como quedó enmendada, solamente se exige al notario el acto mecánico de hacer copias. No se le impone el deber de extraer de un testamento una cláusula la cual puede suponerse que favorece a persona determinada. Este no es el aspecto más importante del caso pero es quizás el más claro puesto que la Ley de *Mandamus* existe solamente para obligar al cumplimiento de un deber. El notario no tiene obligación alguna de hacer una elección, lo que envuelve cierto ejercicio del entendimiento y discreción.

Supongamos que la cláusula en el testamento diga como frecuentemente sucede: ''Confiero a mi hijo Juan cierta propiedad (especificándola).'' Si el hijo que se menciona es un hijo natural, sería particularmente eficaz como un reconocimiento, pero que el hijo es natural u otros particulares relativos a su identificación tendría que hacerlos el notario. El notario tendría que considerar la suficiencia de la cláusula así como de la identificación del hijo. .

El testamento es un acto personal. El acto que se exige al notario es personal. La Ley de *Mandamus* es de poca aplicación bajo tales circunstancias.

Además en este caso de *mandamus* en particular existe el hecho de que no es la hija la que solicita la copia de la escritura notarial. Es la madre de la hija la que la exige por virtud de la patria potestad que tiene sobre ella. Si ella hubiera establecido esta acción a nombre de la hija el caso podría ser distinto, pero no me parece que tenga ella el interés que la ley requiere.